COMMONWEALTH *vs.* EARL V. RHODES. February 27, 1986. *Firearms.*

On behalf of the Commonwealth, a ballistics expert from the firearms identification section of the Department of Public Safety, Lieutenant James T. McGuinness, testified that the weapon which the defendant has been charged with unlawfully carrying (G. L. c. 269, § 10[*a*]) "could not be fired." The unlawful carrying statute speaks of a firearm as defined in G. L. c. 140, § 121. The latter statute, as amended through St. 1983, c. 516, § 1, describes as a firearm a weapon "from which a shot or bullet can be discharged." As matters were left at the close of the Commonwealth's evidence, the handgun found in a car under the defendant's control was not a weapon from which a shot or bullet could be discharged. Accordingly, the defendant's timely motion for a required finding of not guilty was

---

wrongly denied, the judgment is to be reversed and judgment is to be entered for the defendant.

In *Commonwealth* v. *Bartholomew,* 326 Mass. 218, 219-220 (1950), the court held that a Thompson submachine gun without a firing pin did not lose its character as a machine gun within the meaning of G. L. c. 140, § 121, because the missing firing pin was a standard part, easily replaced. If a slight repair, replacement, or adjustment could make the weapon effective, the court reasoned, it was a firearm for purposes of the statute.

The defective part in the case at bar, according to the expert, was a bent sear bar connector lever. In its proper shape, the sear bar was to have a ninety degree bend. The sear bar in the .25 caliber Raven "auto" pistol taken from the defendant's car had a sixty degree bend. That flaw prevented contact with the trigger bar and, in turn, kept the firing pin from striking the live load. To make the pistol work, the Commonwealth's ballistician removed a working sear bar from a pistol he had in stock at State police headquarters and installed it in the defendant's pistol. To do that, the ballistician first had to field strip the defendant's pistol and remove the misshapen sear bar.

The evidence could not have enabled the jury to find that the repair required to the defendant's pistol was as minor and obvious as the insertion of a firing pin in the submachine gun in the *Bartholomew* case. Obviously, the repair was an insubstantial hurdle for the ballistician, but he was a weapons' expert with specialized training. That training included completion of courses at factory schools of the Smith & Wesson Arms Company, the Remington Arms Company, the Savage Arms Company, the Nobel Manufacturing Company, the Iver Johnson Arms and Cycle Works, and the Ruger Arms Company. There was no evidence sufficient to justify an inference that the defendant was sufficiently skilled to repair the weapon, or that an untrained user of a pistol could make the repair. It is one thing to shoot a weapon; quite another to repair it. Everyone knows how to turn on a television set; few can fix one.

In a series of cases, the firing capability of a weapon was a question of fact left to the jury. *Commonwealth* v. *Bartholomew,* 326 Mass. at 222. *Commonwealth* v. *Fancy,* 349 Mass. 196, 204 (1965). *Commonwealth* v. *Sperrazza,* 372 Mass. 667, 670 (1977). *Commonwealth* v. *Stallions,* 9 Mass. App. Ct. 23, 25-26 (1980). In the *Fancy, Sperrazza,* and *Stallions* cases the jurors had before them assembled and apparently operable weapons from which to make a judgment, without other comment. In the case at bar the Commonwealth's own and only evidence was that the defendant's pistol could *not* be fired. An essential element of the offense against G. L. c. 269, § 10(*a*), is that the firearm carried be a working one. *Commonwealth* v. *Seay,* 376 Mass. 735, 737 (1978). *Commonwealth* v. *Dunphy,* 377 Mass. 453, 456 (1979). *Commonwealth* v. *Sampson,* 383 Mass. 750, 759 (1981). *Commonwealth* v. *Rhodes,* 389 Mass. 641, 643 (1983). Compare *Commonwealth* v. *Colton,* 333 Mass. 607 (1956) (machine gun in perfect working

condition required only ammunition clip); *People* v. *Tardibuono,* 174 Misc. 305, 306 (N.Y. Ct. Gen. Sess. 1940); *Commonwealth* v. *Grab,* 54 Pa. D. & C. 233, 240 (1945). At the close of the Commonwealth's evidence in the instant case, the jury could do no more than speculate how easy or difficult diagnosis and repair of the weapon's defect might be. The weapon itself when it went to the jury room was disassembled. On the view we have taken of the case, we need not consider the other issues raised by the defendant.

> *Judgment reversed.*
> *Verdict set aside.*
> *Judgment for the defendant.*

*Wendy Sibbison* for the defendant.

*Philip A. Rollins,* District Attorney, & *Michael O'Keefe,* Assistant District Attorney, for the Commonwealth, submitted a brief.

