NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-923

COMMONWEALTH

vs.

JOVINO RIVERA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a five-day jury trial, the defendant was convicted of possessing a firearm without a license in violation of G. L. c. 269, § 10 (a). He then pleaded guilty to a sentencing enhancement for having been previously convicted of three violent crimes. See G. L. c. 269, § 10G (c). On appeal, the defendant claims that there was insufficient evidence to prove that he possessed the firearm discovered at the scene. We affirm.

Background. We recite the facts in the light most favorable to the Commonwealth, reserving additional facts for later discussion. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). The defendant and his girlfriend had a domestic dispute at her family member's apartment. The landlord, overhearing the dispute from her upstairs apartment, called 9-1-

1 to report the disturbance.  Shortly after, the landlord "look[ed] out the front window" and saw the defendant on the street with his girlfriend, "struggling over something" that was "black, triangular, [and in] a [black] gun holster." Eventually, the landlord saw the defendant pull a "revolver . . . [with] a silver barrel . . . [and] a dark handle" out of the holster.  The landlord called 9-1-1 a second time, explaining that the defendant, "an Hispanic male" and "older gentleman" with "somewhat gray and white hair" wearing "a t-shirt and shorts" had a gun, and that he was taking the gun, in its holster, down an alleyway between the two houses directly across the street from her apartment.  Minutes later, the defendant returned to the street empty-handed.

By the time the first police officer arrived at the scene, a group of people had joined the defendant on the street. Of the people outside, only the defendant matched the description given in the 9-1-1 call.  When confronted by the officer, the defendant insisted that he "never had a gun" and had been holding a carjack.  The defendant then took the officer up a driveway adjacent to the alleyway and showed him a carjack lying on the ground.  The officer showed the carjack to the landlord, who -- affronted -- denied that it was what she had seen from her window, reiterating that "[i]t was a revolver, silver, wooden handle in a black holster."

2

Additional officers arrived at the scene and searched the alleyway. Near the back of the alleyway, hidden inside a gas grill, the officers discovered a black revolver with a wooden handle in a black holster. A ballistics expert later determined that the gun was a functioning firearm, meaning capable of firing a bullet.

At trial, the defense theory was that the defendant never possessed a gun, only a carjack. The Commonwealth's evidence included the gun and holster and a recording of the second 9-1-1 call. The defendant's main argument was that the silver-barreled gun described by the landlord could not have been the same, black-barreled gun discovered in the grill. At the close of the Commonwealth's case and at the close of all the evidence, the judge denied motions for a required finding of not guilty, and the jury ultimately found the defendant guilty.

Discussion. "The standard for evaluating a motion for a required finding of not guilty is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. James, 424 Mass. 770, 784 (1997), quoting Latimore, 378 Mass. at 677. "To sustain a conviction under G. L. c. 269, § 10 (a), the Commonwealth must prove[, among other elements,] that the defendant knowingly possessed a firearm." Commonwealth v.

3

DeJesus, 489 Mass. 292, 298 (2022), quoting Commonwealth v. White, 452 Mass. 133, 136 (2008).[1]  Proof of constructive possession requires a showing that the defendant "had knowledge coupled with the ability and intention to exercise dominion and control" over the firearm.  Commonwealth v. Than, 442 Mass. 748, 751 (2004), quoting Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004).  "This proof 'may be established by circumstantial evidence, and the inferences that can be drawn therefrom.'"  Commonwealth v. Dagraca-Teixeira, 471 Mass. 1002, 1004 (2015), quoting Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989).  Here, the circumstantial evidence supported the inferences that the defendant knew about the gun and had the ability and intent to exercise control over it.

The jury reasonably could infer that the defendant possessed the same firearm that was later discovered in the grill.  The landlord, who had seen the defendant on at least fifty prior occasions, immediately identified him to police as "the man who had a gun" and described with particularity his physical appearance, his "old school revolver" in a black

---

[1] The Commonwealth must also prove that the firearm had the capacity to discharge a shot or bullet.  See G. L. c. 269, 10 (a); G. L. c. 140, § 121.  The jury's verdict was supported by the ballistics expert's testimony that the firearm was capable of discharging a bullet.  See Commonwealth v. Nieves, 43 Mass. App. Ct. 1, 2 (1997) (burden "requires only that the Commonwealth present some competent evidence from which the jury reasonably can draw inferences that the weapon will fire").

4

holster, and the location of the alleyway where she saw him retreat with the gun.  See Commonwealth v. Brown, 50 Mass. App. Ct. 253, 257 (2000) ("direct evidence" of actual possession includes eyewitness observation).  She saw him walk into the alleyway with the gun and return to the street empty-handed. This evidence directly supported the inference that the defendant possessed a firearm when he went into the alleyway. See Commonwealth v. Williams, 422 Mass. 111, 120-121 (1996) (jury could infer possession from "eyewitness testimony that the defendant had a firearm in his possession").

Where the landlord described a revolver with a "wooden" handle, in a "black holster," being taken into an alleyway, the jury could reasonably conclude that the only gun discovered in that same alleyway -- a revolver with a wooden handle in a black holster -- was the same gun that the landlord had seen.  See Commonwealth v. Sperrazza, 372 Mass. 667, 670 (1977) (eyewitness descriptions of weapon and ballistics expert's testimony that lack of shell casings was consistent with weapon's being revolver sufficient to support conviction of unlawful carrying); White, 452 Mass. at 136 (evidence sufficient to infer possession of gun found inside air vent in hallway of car wash where eyewitness saw defendant holding gun when he entered hallway and not holding it when he emerged).

The jury also heard that it was light outside and the landlord could see the scene from her window.  See Commonwealth v. Ayala, 481 Mass. 46, 52-53 (2018) (reliability of eyewitness identification supported by evidence that crime scene sufficiently illuminated at time of shooting, eyewitness recognized defendant from prior encounter, and eyewitness successfully identified defendant from photo array).  The jury were free to resolve any inconsistencies concerning the color of the gun's barrel in favor of the Commonwealth.  See Commonwealth v. Watkins, 473 Mass. 222, 229-230 (2015); Commonwealth v. Ruci, 409 Mass. 94, 97 (1991).

The evidence further permitted the jury to infer that the defendant lied to police about the weapon being a carjack, and that he had deliberately hidden the gun in the grill.  See Commonwealth v. Robles, 423 Mass. 62, 71 (1996) ("[f]alse statements to police may be considered as consciousness of guilt if there is other evidence tending to prove the falsity of the statements"); Commonwealth v. Whitlock, 39 Mass. App. Ct. 514, 519 (1995) (evidence of "attempts to conceal or dispose of contraband . . . permit an inference of unlawful possession").

We are satisfied that a rational juror could reasonably

infer from the evidence that the defendant possessed the gun found in the grill.

Judgment affirmed.

By the Court (Massing,
  Hershfang & D'Angelo, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  April 20, 2023.

---

[2] The panelists are listed in order of seniority.