COMMONWEALTH *vs.* LUIS VELEZ.

No. 11-P-92.

Hampden. January 3, 2012. - June 18, 2012.

Present: RAPOZA, C.J., GRAINGER, & SIKORA, JJ.

*Firearms. Constitutional Law,* Retroactivity of judicial holding, Confrontation
   of witnesses. *Practice, Criminal,* Retroactivity of judicial holding,
   Confrontation of witnesses, Instructions to jury. *Evidence,* Ballistician's
   certificate.

This court concluded that the decision of the Supreme Judicial Court in *Com-
   monwealth* v. *Melendez-Diaz,* 460 Mass. 238 (2011), foreclosed a criminal
   defendant's second motion for a new trial, in which he attacked the admis-
   sibility of a certificate of ballistics analysis, as a retroactive, collateral at-
   tack on a final conviction. [16-17]
At the trial of an indictment charging unlawful possession of ammunition, the
   admission in evidence of a certificate of ballistics analysis without the
   presence of the subscribing ballistics expert, in violation of the defendant's
   rights under the confrontation clause of the Sixth Amendment to the United
   States Constitution, was harmless beyond a reasonable doubt, where
   evidence independent of the certificate reliably established the nature of
   the ammunition. [17-18]
At the trial of an indictment charging unlawful possession of ammunition, the
   judge's instructions to the jury on the definition of "ammunition," even if
   erroneous, did not, in the circumstances, create a substantial risk of a
   miscarriage of justice. [18-20]

INDICTMENTS found and returned in the Superior Court Depart-
ment on October 2, 2003.

A motion for a new trial, filed on August 13, 2010, was
considered by *John A. Agostini,* J.

*Thomas D. Frothingham* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the
Commonwealth.

SIKORA, J. A Superior Court jury convicted the defendant,
Luis Velez, of unlawful possession of a firearm, G. L. c. 269,
§ 10(*a*), and of unlawful possession of ammunition, G. L. c. 269,

§ 10(*h*). The defendant then pleaded guilty to part of the enhanced sentencing portion of each charge, i.e., to two prior convictions of violent crimes or serious drug offenses, G. L. c. 269, § 10G(*b*). Upon each of the two enhanced charges the judge imposed the agreed, recommended, concurrent sentence of twelve to fifteen years in State prison. Twelve months after affirmance of the convictions by direct appeal, the United States Supreme Court delivered the decision of *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 310 (2009) (*Melendez-Diaz I*). The defendant moved for a new trial upon the ground that the admission of a certificate of the operability of the firearm and of the ammunition without the presence of the subscribing ballistics expert violated his right of confrontation under the Sixth Amendment to the United States Constitution. The motion judge (also the trial judge) vacated the firearm conviction but denied the motion for a new trial upon the ammunition charge. The defendant appeals from the denial. The appeal presents questions generated by the timing and application of *Melendez-Diaz I* and by a jury instruction literally inaccurate but effectively intelligible to the jury. For the following reasons we affirm the denial of the challenge to the ammunition conviction.[1]

*Background.* 1. *Facts.* The jury received the following evidence. In the early morning hours of September 6, 2003, the Springfield police dispatch service directed two officers to the downtown location of the Main Street Café. They found a crowd of fifteen to twenty persons in the parking lot. A member of the crowd, Carlos Sanchez, told Officer Leonard Matos that in the course of an argument inside the café an individual had pointed a silver handgun at him. Sanchez directed the attention of both officers to the defendant as he walked from the rear of the parking lot toward a minivan with his hands tucked under his shirt. Both officers saw him reach the minivan, remove something from his shirt, and place it in the wheel well on top of a tire. The defendant moved away from the minivan and toward the crowd. The police saw no one else in the immediate area of the vehicle. Both officers walked to the minivan.

Officer David Franco recovered a "Mack 10" firearm from

---

[1]As discussed later, the Commonwealth has not appealed from the judge's order vacating the firearm conviction.

the wheel well. The weapon included an implanted ammunition clip, or magazine, loaded to capacity with .45 caliber rounds or cartridges. The chamber housed one round. The trigger included a fingerprint guard. The State police firearms identification section subsequently test fired the weapon with one of the recovered .45 caliber rounds and with .45 caliber rounds from the section's own inventory, and provided a certificate reporting the absence of any malfunction and the conformance of the firearm and recovered ammunition with Massachusetts statutory definitions. Within the certificate, a State police officer attested to his "observations, experience, and test firings" and to his qualification as a ballistics expert eligible to appear in the Superior and District Courts.

At trial the firearm and the ammunition came into evidence without objection. So did the ballistics certificate. See G. L. c. 140, § 121A. The authoring ballistics expert did not testify. Throughout deliberation, the jury had available the certificate, the weapon, and the ammunition (though not simultaneously).

2. *Procedural history.* The chronology of posttrial events determines the eligibility of the defendant's present appellate contentions for consideration. The trial concluded in July, 2004. The defendant filed a timely notice of appeal in August, 2004. An unexplained lull intervened. In March of 2007, he moved for a new trial on the basis of ineffective assistance of trial counsel. In July of that year, the judge denied the motion; the defendant timely appealed. The Appeals Court heard the consolidated appeals and affirmed both convictions and the order denying the first motion for new trial by unpublished memorandum and order on May 14, 2008. *Commonwealth* v. *Velez,* 71 Mass. App. Ct. 1124 (2008). The defendant submitted a petition for further appellate review to the Supreme Judicial Court. That court denied the petition on June 25, 2008. *Commonwealth* v. *Velez,* 451 Mass. 1109 (2008). At that point the judgments became final.

In June of 2009, in *Melendez-Diaz I,* the Supreme Court held that the admission of laboratory certificates of analysis declaring the composition and amount of alleged controlled substances, without the presence of the certifying analyst for cross-examination (or the prior opportunity to cross-examine the

analyst if unavailable at trial), violated the defendant's Sixth Amendment right to confront the analyst about the competence and integrity of the certification. 557 U.S. at 310. That doctrinal development prompted the defendant here, in August of 2010, to submit a second motion for a new trial, upon the ground that the admission of the ballistician's certificate without his presence or prior opportunity for cross-examination had deprived the defendant of the right of confrontation.[2] In response the Commonwealth conceded that *Melendez-Diaz I* voided the firearm conviction but argued that the ammunition conviction remained valid because independent evidence of the character of the seized bullets rendered the effect of the certificate harmless beyond a reasonable doubt.

By decision in November of 2010, the judge reached the same conclusions. He reasoned that *Melendez-Diaz I* controlled the admission of the certificate in this case, and he vacated the firearm conviction. As to the ammunition, he ruled that the evidence of the location of the rounds in a loaded magazine locked into the handgun established their nature and left the probative force of the certificate harmless beyond a reasonable doubt.[3]

In July of 2011 the Supreme Judicial Court concluded "that the rule announced in [*Melendez-Diaz I*], as it relates to the applicability of the confrontation clause to certificates of chemical analysis (drug certificates), is a 'new' rule within the meaning of *Teague* v. *Lane*, 489 U.S. 288 (1989) (*Teague*), and . . . is not available to the defendant in this appeal from the denial of his motion for a new trial." *Commonwealth* v. *Melendez-Diaz*, 460 Mass. 238, 239-240 (2011) (*Melendez-Diaz II*). The court reasoned that *Melendez-Diaz I* had "broke[n] new ground and announced a new rule" concerning forensic certificates and that such a rule had not arisen with the general rationale of *Crawford* v. *Washington*, 541 U.S. 36, 54 (2004). *Melendez-Diaz II, supra* at 246. As "new" constitutional doctrine, *Melendez-Diaz*

---

[2]The defendant also contended that he had not waived this argument, in light of *Commonwealth* v. *Vasquez*, 456 Mass. 350, 360 (2010), decided some five months earlier.

[3]The judge relied specifically upon *Commonwealth* v. *Muniz*, 456 Mass. 166, 172-173 (2010).

*I*'s invalidation of convictions dependent upon unchallenged forensic certificates operated only prospectively from its date of delivery; it could not apply retroactively to support collateral attacks (by motions for new trial or other means) upon convictions final before the introduction of the new rule. *Melendez-Diaz II, supra* at 242-243.

Here, at the time of the defendant's second motion for a new trial, submitted after *Melendez-Diaz I* and before *Melendez-Diaz II*, the judge had no definitive ruling available upon the retroactive effect of *Melendez-Diaz I*. The memoranda of both the defendant and the Commonwealth assumed its retroactivity. The issue set by the defendant's notice of the present appeal is the correctness of the judge's denial of the motion for a new trial (i.e., a motion to vacate) upon the ammunition conviction. Both sides submitted their original briefs in this court before the announcement of *Melendez-Diaz II* in late July of 2011. We have requested and received supplemental memoranda addressing the effect of that decision upon their positions.

*Analysis.* The Commonwealth has not invoked *Melendez-Diaz II* as grounds for reinstatement of the firearm conviction even though that decision would appear to have precluded the defendant's second and partially successful motion for a new trial on the basis of *Melendez-Diaz I*. The Commonwealth has left in place the vacatur of the firearm conviction. It plays no part in the present appeal. The question presented is the correctness of the ammunition conviction.

1. *Foreclosure of collateral attack.* The defendant argues that *Melendez-Diaz II* should not foreclose his second motion for a new trial because in that effort he has attacked the admissibility of the ballistics certificate not only upon the authority of *Melendez-Diaz I* but also upon the strength of *Crawford* v. *Washington,* 541 U.S. at 68-69, as a March, 2004, confrontation clause decision in force at the time of his July, 2004, trial and therefore not a "new" rule barred from application to his conviction.[4]

However, the court in *Melendez-Diaz II,* 460 Mass. at 244-246,

---

[4]The defendant points out that presentation of a *Crawford* argument on direct appeal or in the first motion for new a trial would have been futile because the decision of *Commonwealth* v. *Verde,* 444 Mass. 279, 282-285

emphatically rejected the contention that *Melendez-Diaz I* served only as an established corollary or predictable application of the *Crawford* decision. The court viewed the application of the confrontation clause to forensic certificates as a novel and distinctive doctrine abrogating the settled admissibility of chemical analysis results as an exception to the hearsay exclusion by reason of their character as "merely records of primary fact that required no judgment or discretion by the analysts who prepared them." *Melendez-Diaz II, supra* at 245, citing *Commonwealth* v. *Slavski,* 245 Mass. 405, 415-417 (1923) (admission of certificates to show the alcoholic ingredients of "moonshine"), and *Commonwealth* v. *Harvard,* 356 Mass. 452, 461-463 (1969) (admission of drug analysis certificates). The court in *Melendez-Diaz II, supra,* observed also the Supreme Court's reservations in *Crawford* about the definition of "testimonial" evidence to be worked out in later cases. "We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." (Footnote omitted.) *Crawford* v. *Washington,* 541 U.S. at 68. The category of forensic certification lay five years in the future in the form of the five-to-four decision of *Melendez-Diaz I.* In sum, *Melendez-Diaz II* prohibits the defendant's second motion for a new trial as a retroactive, collateral attack upon a final conviction.

2. *Evidentiary merits.* As a separate ground, the judge correctly concluded that evidence independent of the certificate established the nature of the ammunition so reliably as to render its admission harmless beyond a reasonable doubt. The test is whether "other properly admitted evidence of guilt is overwhelming, in the sense that it is so powerful as to nullify any effect that the improperly admitted evidence might have had on the

(2005), in May of 2005, sanctioned the admissibility of forensic certificates until the rendition of *Melendez-Diaz I* in June of 2009.

In October of 2009 this court first recognized the applicability of *Melendez-Diaz I* to ballistics certificates in cases short of final affirmance. See *Commonwealth* v. *Brown,* 75 Mass. App. Ct. 361, 362-364 & n.3 (2009).

fact finder or the findings" (quotation marks omitted). *Commonwealth* v. *Vasquez*, 456 Mass. 350, 362 (2010), quoting from *Commonwealth* v. *Tyree*, 455 Mass. 676, 704 n.44 (2010).

As the motion judge pointed out, the Commonwealth's burden of proof on the nature of ammunition differs markedly from its burden on the operability of a firearm. See, e.g., *Commonwealth* v. *Barbosa*, 461 Mass. 431, 432 (2012) (admission of ballistics certificate without testimony of ballistician generated successful appeal of firearm conviction, but defendant did not appeal from ammunition conviction). The definition of ammunition in G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8, requires only that it be "designed for use in any firearm." For prosecution of unlawful possession, the Commonwealth does not bear the burden of proving that the alleged ammunition is capable of being fired. *Commonwealth* v. *Mendes*, 44 Mass. App. Ct. 903, 904 (1997). The prosecution need show only that the alleged ammunition is designed for firing by some firearm. *Commonwealth* v. *Muniz*, 456 Mass. 166, 173 (2010).

The quality and quantity of proof of such design can rest upon percipient evidence and the fact finder's common sense and life experience. "The cartridges themselves and the officer's testimony that they were found in the magazine, which was in the gun at the time it was seized, provide overwhelming evidence that the cartridges met the statutory definition of ammunition." *Ibid.* Expert testimony is unnecessary. Compare *Commonwealth* v. *Loadholt*, 456 Mass. 411, 433 (2010), and cases cited.

Here the jury had in evidence the handgun, the magazine, and thirty[5] .45 caliber cartridges. They heard testimony that when recovered the handgun contained a round in its chamber and a full magazine inserted into its handgrip. The force of that evidence overrode any improper effect of the certificate. See *id.* at 434.

3. *Instructions.* The defendant points out that the judge did not instruct the jury precisely upon the definition of ammunition, and argues that the resulting conviction does not rest upon a correct understanding of the law by the jury. The judge informed the

---

[5]The number might be twenty-nine, but the difference is immaterial to our analysis.

jury, "Ammunition is defined as shots, bullets, slugs or any projectile that can be discharged from a firearm, rifle or shotgun." The statute requires "*design*[] [of the cartridges] for use in any firearm" (emphasis supplied). G. L. c. 140, § 121.

Defense counsel made no objection to the discrepancy. The issue does not appear to have been raised by the direct appeal or by the first motion for a new trial even though it was available for assertion. Nor did the defendant raise it below in his memorandum in support of his second motion for new trial. Consequently, it is waived. See Mass.R.Crim.P. 30(c)(2), as appearing in 435 Mass. 1501 (2001) (requiring presentation of all grounds for a motion for a new trial under rule 30[b] to be raised by an original or amended original motion); *Rodwell* v. *Commonwealth*, 432 Mass. 1016, 1018 (2000) ("If a defendant fails to raise a claim . . . known and available at the time of trial or direct appeal or in the first motion for postconviction relief, the claim is waived"), and cases cited.

If we were to reach the merits, the standard of review for this unpreserved error would be the presence of a substantial risk of a miscarriage of justice: whether the error materially influenced the verdict in the light of the evidence and law of the entire trial. *Commonwealth* v. *Randolph*, 438 Mass. 290, 297-298 (2002). Two considerations convince us that a substantial risk never arose. First, the instruction requiring a finding of dischargeability of ammunition appears more demanding than one requiring design. The jury's finding of dischargeability carries the compelling inference of a finding of design. It would be extraordinary for a reasonable person to find that an operable bullet was not a designed bullet. The jury saw the thirty uniform rounds, the magazine, and the weapon.

Second, the law treats the details of instructions with a degree of reasonable tolerance in trials in which the body of evidence leaves no reasonable doubt of the propriety of a verdict. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 15 (1999) (despite an improper instruction upon one element of the crime, overwhelming evidence warranted the verdict of guilt); *Commonwealth* v. *Loadholt*, 456 Mass. at 427 (same). The record does not contain evidence which "could rationally lead to a contrary finding with respect to the omitted [or here, erroneously described,]

element." *Commonwealth* v. *Matos*, 78 Mass. App. Ct. 578, 588 (2011), quoting from *Neder* v. *United States*, 527 U.S. 1, 19 (1999).

*Conclusion.* For these reasons, we affirm the order denying the second motion for a new trial upon the charge of unlawful possession of ammunition.

*So ordered.*